FILED
 2008 Jan-30  PM 04:51
 U.S. DISTRICT COURT
 N.D. OF ALABAMA

### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

LINDA BARRETT,

    PLAINTIFF,

VS.                                                     CASE NO.: CV-07-J-1341-S

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    DEFENDANT.

### **MEMORANDUM OPINION**

This matter is before the court on the record and the briefs of the parties. This Court has jurisdiction pursuant to 42 U.S.C. § 405. The plaintiff is seeking reversal or remand of a final decision of the Commissioner. All administrative remedies have been exhausted.

### **Procedural Background**

The plaintiff applied for Supplemental Security Income benefits on May 20, 1999, due to back pain resulting from an on the job injury in 1997 (R. 104-113). After hearing, the plaintiff was approved for a closed period of disability benefits based on that injury from May 1997 through June 1998 (R. 56) in a June 2000 decision. The plaintiff appealed this decision to the Appeals Council which, approximately five years later, remanded the decision to the administrative law judge (ALJ) to give consideration to the plaintiff's treating physician's opinion that she was

unable to return to work and obtain additional evidence if necessary (R. 87). After remand, the ALJ obtained additional medical records and held an additional hearing in August 2005 (R. 461-488). Thereafter, the ALJ issued an opinion finding that his original decision was correct (R. 17-27). The Appeals Council thereafter denied review on May 25, 2007 (R. 7-9). The ALJ's decision of February 22, 2006, thus became the final order of the Commissioner. *See* 42 U.S.C.§ 405(g). This action for judicial review of the agency action followed (doc. 1). The plaintiff argues that the ALJ failed to properly apply the three part pain standard as set forth by the Eleventh Circuit Court of Appeals (doc. 9 at 5); failed to give proper weight to the opinion of plaintiff's treating physician (doc. 9 at 8); and had no basis in fact for his determination of the plaintiff's residual functional capacity (doc. 9 at 12).

The court has considered the record and the briefs of the parties. For the reasons set forth herein, this case is **REVERSED** and **REMANDED.**

## Factual Background

The plaintiff was born on February 21, 1961, and has a tenth grade education (R. 466). She testified that she was unable to work due to pain which requires her to lie down every day, for several hours at a time (R. 471-472). Evidence reflects that the plaintiff has persistent lower back pain radiating into her right hip and leg (R. 468). She underwent three surgeries, two for a disc in her back and one because gauze was left in her back after the first surgery (R. 473). Epidural injections have

not helped her and now she has more trouble walking (R. 472). The plaintiff was sent for physical therapy but did not continue going because the therapy hurt too badly (R. 472). She does have a TENS unit that she uses daily (R. 474).

The plaintiff stated that since June 1998 she has not been able to sit or stand long enough to work an eight hour day (R. 473). She testified that the pain is in her lower back and goes over her hips and down her legs (R. 474). Walking makes her pain worse (R. 474). Her legs are numb except she has a burning sensation down her back into her legs and feet (R. 475). That causes her to need to constantly move her legs around to keep her toes from turning under (R. 475). Soaking in a hot tub or shower helps (R. 475).

The plaintiff testified that she can sit for fifteen or twenty minutes before her legs start to tingle and go numb, stand for no more than ten minutes before her lower back feels like it is going to break, and walk less than a block (R. 476-477). She estimated she can lift no more than five pounds (R. 477). The plaintiff testified that Dr. Clark told her not to lift more than five pounds and to avoid bending or stooping (R. 477). She spends her time crocheting and reading (R. 478). She drives one or two times a week to the store two blocks from her home (R. 478-479).

The Vocational Expert (VE) at the hearing testified the plaintiff's past work was in the light to medium range and at the unskilled to semiskilled level, but none of the past work had skills that would transfer to other positions (R. 479-480). Told

to assume an individual with a limited education who could only occasionally bend, stoop, squat, climb, and twist with no driving, no push/pull movements of her upper or lower extremities with pain that is mild to moderate, the VE stated such limitations would preclude the plaintiff's past relevant work (R. 480-481). Such a person would be unable to perform any medium level work but there would be light work as a security guard within the limitations given (R. 482). There would also be sedentary level security monitor and receptionist jobs, but these would include arm movements (R. 483). Adding a sit stand option would further erode available jobs within the given scenario (R. 484). Complete limitations from bending, stooping, squatting, climbing and twisting along with an inability to walk about the work place would eliminate all light level jobs but not impact the previously identified sedentary positions (R. 484-485).

The VE further testified that if Dr. Wallace Purdy's assessment of plaintiff's abilities from August 1999 was found credible, the plaintiff would not be able to maintain any gainful employment (R. 485-486). Similarly, the limitation imposed by Dr. Livingston of no lifting or carrying would eliminate even sedentary work (R. 486-487).

The medical evidence in the record at the time of the hearing demonstrates that the plaintiff's pain has not improved since June 1998.

After the three surgeries, a CT in March 1998 reflected diffuse bulging at L5-S1 with evidence of neural foraminal narrowing, possibly causing compression of the right L5 nerve root; diffuse disc bulging at L4-5 associated with osteophyte formation causing slight narrowing of the central canal and left lateral recess; and diffuse disc bulging causing moderate canal stenosis and bilateral lateral recess narrowing at L4 (R. 213). The plaintiff was seen in an emergency room in July 1998 for lower back pain which she rated as a 9 or 10 out of 10 (R. 199-200). She complained of burning in her legs as well (R. 200). She was also noted to be in acute or chronic pain and anxious (R. 200). She was given Demerol and discharged with a diagnosis of back pain, with her condition noted to be unchanged (R. 199, 201). Several days later, the plaintiff was seen again for back pain and her right leg going numb (R. 239-240). She was again given Demerol as well as the names of neurosurgeons and told to see one of them "ASAP" (R. 240, 244).

The record does reflect that the plaintiff was released back to work by Dr. Clark with permanent restrictions in July of 1998 (R. 256, 267). He did not believe further surgery would help the plaintiff (R. 262, 267). The plaintiff returned to Dr. Clark in August 1998 due to severe lower back pain extending into both legs which had worsened since he last saw her (R. 266). A November 1998 MRI found laminotomy defect, epidural fibrosis, broad based extra-dural lesion, a bilateral lateral recess stenosis which was found to be a broad based disc protrusion with a calcified

5

annulus, and facet joint hypertrophy bilaterally, all at L5-S1 (R. 312). A broad based extradural lesion and a disc herniation were noted at L4-5 and a disc herniation was seen at L3-4 as well as a moderate degree of stenosis (R. 312). A small disc protrusion was also noted at the T12-L1 level (R. 313). A February 2000 record from Dr. Clark noted that the plaintiff is not working, and was seen for increased back pain (R. 309). He noted some paresthesias in her leg, but no clear cut radicular pain (R. 309). He opined that the plaintiff suffered from disk degeneration and protrusion at multiple levels (R. 309). He referred the plaintiff to a weight loss program and suggested water therapy and/or whirlpool (R. 309).

The plaintiff has also been followed by Pain Management Services, P.C. (R. 255). In August 1998, Dr. Marion Sovic noted that a caudal block did not provide the plaintiff any relief (R. 255). The plaintiff was then tried on Lortab, but reported her pain was worse (R. 255). Dr. Sovic concluded that "there is nothing else I have to offer this patient" (R. 255). The plaintiff was referred to Dr. Doleys for pain management, but deferred going until an MRI was done (R. 254-255).

The plaintiff was referred to Dr. Wallace Purdy, Jr., in August 1999 for a consultative physical examination (R. 285). Upon examination, he noted decreased sensation on the bottom of the plaintiff's right foot, straight leg raise was limited and accompanied by severe low back pain, lumbar flexion was limited by pain, and she had trouble squatting due to pain (R. 286). Dr. Purdy opined that the plaintiff

suffered from severe low back pain and sciatica symptoms (R. 287). He believed the plaintiff could handle objects, hear and speak, but would be limited from sitting, standing, walking, lifting, carrying and traveling (R. 287).

The plaintiff was seen by Dr. Clark again in October 2003 for lower back pain and degenerative disc disease (R. 327). He referred her to rehabilitation services and prescribed a TENS unit for her, which she was to wear for two hours at a time (R. 330, 332). At the time, the plaintiff rated her pain as a 5 to 7 out of 10 (R. 332). Dr. Clark noted that he had not seen the plaintiff since 2000, that she was applying for disability and that she complained of back pain extending into both legs (R. 337). He believed she had degenerative disk disease and possible neuropathy (R. 337).

The plaintiff was sent to Dr. Wiley Livingston, Jr., for another consultative physical examination in May 2005 (R. 378). Upon examination, the plaintiff was noted to have full range of motion in her arms, but Dr. Livingston could not test straight leg raise because the plaintiff could not lie flat (R. 379). She was noted to be unable to squat, had very limited ability to bend from side to side, and was unsteady in performing heel-to-toe walk (R. 379). He opined that the plaintiff suffered from low back pain and obesity (R. 379). Dr. Livingston believed the plaintiff had seen the proper specialists and that weight reduction might help the plaintiff's back as much as anything else (R. 379). In completing a Medical Source Opinion (Physical) form, Dr. Livingston thought the plaintiff should have no limitation in sitting, but

would be limited to standing no more than 30 minutes at a time and no more than 1½ to 2 hours total in an eight hour day, and further limited to walking no more than 30 minutes at a time and no more than 1½ to 2 hours total in an eight hour day (R. 381). He noted that she should lift and carry no weight at any time (R. 381). Furthermore, while Dr. Livingston believed the plaintiff's ability to handle, finger, feel, talk and hear were unlimited, he opined that she could push/pull with her arms, climb, balance, and reach overhead only occasionally, and could never push/pull with her legs, kneel, stoop, crouch or crawl (R. 382).

     Dr. Clark referred the plaintiff to Dr. Poczatek for physical therapy, noting that she did not have a surgical problem (R. 394, 397). The plaintiff was sent for a physical therapy evaluation in June 2005 (R. 385). Treatment records from Dr. Robert Poczatek at that time reflect nerve conduction studies demonstrated a diffuse peripheral neuropathy (R. 391, 402). Upon examination, Dr. Poczatek found mild to moderate tenderness along plaintiff's lumbar spine with decreased range of motion (R. 391). However, the plaintiff had full strength in her legs (R. 391). He sent her for a lumbar epidural to be followed by physical therapy (R. 392).

     The evaluation record notes that the plaintiff has had six nerve blocks with no relief, the most recent in June 2005; her legs go numb; she was not able to tolerate work hardening; she was told in the past therapy would not benefit her; her right knee buckles; she has to lie down several times a day; she can walk only half a block;

bending, sitting, rising from a sit, standing, walking and lying all make her symptoms worse; she could sleep for only 1½ to 2 hours at a time, and a nerve conduction test found severe nerve damage in both her legs (R. 387). The plaintiff relayed that her pain ranged from a 5 to a 10 out of 10 (R. 387). Although she was approved for therapy, the plaintiff stated she would only allow deep heat and no other therapy (R. 386). However, plaintiff's workers' compensation insurance carrier had approved only active therapy and deep heat treatment was not thought to be of benefit on its own (R. 386). The plaintiff explained that she felt she would be in more pain from the therapy as that was what happened to her five years previously (R. 386). Therefore, she was discharged due to noncompliance (R. 386).

The plaintiff was referred to PainSouth for further treatment beginning in February 2006[1] (R. 411). Dr. David Cosgrove noted the plaintiff suffered from failed back surgery syndrome, chronic back pain, bilateral lower extremity pain and lumbar nerve root injury, for which she received narcotic pain management (R. 405-407). Dr. Cosgrove prescribed Avinza, Cymbalta and Lyrica, and recommended another

---

[1] The treatment records from PainSouth were presented for the first time to the Appeals Council. Pursuant to the Eleventh Circuit Court of Appeals instruction in *Ingram v. Commissioner of Social Security,* this court has considered the records. *See Ingram v. Commissioner of Social Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir.2007) ("when a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous").

epidural injection[2] (R. 405-406). He also noted she was obese (R. 405). He chastised the plaintiff for taking more than the prescribed amount of Avinza and prescribed Cymbalta to help with the throbbing leg pain the plaintiff was experiencing at night (R. 407). The plaintiff did report that Avinza provided her better pain relief than methadone (R. 408-409).

## Standard of Review

In a Social Security case, the initial burden of establishing disability is on the claimant, who must prove that due to a mental or physical impairment she is unable to perform her previous work. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir.1987). If the claimant is successful, the burden shifts to the Commissioner to prove that the claimant can perform some other type of work existing in the national economy. *Id.*

This court's review of the factual findings in disability cases is limited to determining whether the record contains substantial evidence to support the ALJ's findings and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir.1990). "Substantial evidence" is generally defined as "such relevant evidence as a reasonable mind would accept as adequate to support a

---

[2]Avinza is a morphine medication recommended for individuals with moderate to severe chronic pain which requires continuous, around-the-clock opiod therapy. *Physician's Desk Reference*, 62nd ed., at 1731 (2008). Lyrica is used for neuropathic pain and fibromyalgia. *Id.* at 2517. Cymbalta is used to manage nerve pain as well as depression. *Id.* at 1791-1792.

conclusion." *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir.1996); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983). This court also must be satisfied that the decision of the Commissioner is grounded in the proper application of the appropriate legal standards. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir.1988); *Bridges v. Bowen,* 815 F.2d 622, 624 (11th Cir.1987); *Davis v. Shalala*, 985 F.2d 528 (11th Cir.1993). No such presumption of correctness applies to the Commissioner's conclusions of law, including the determination of the proper standard to be applied in reviewing claims. *Brown v. Sullivan*, 921 F. 2d 1233, 1235 (11th Cir.1991); *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir.1991). Furthermore, the Commissioner's "failure to ... provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius*, 936 F.2d at 1145-1146.

When making a disability determination, the ALJ must consider the combined effects of all impairments. *Davis v. Shalala*, 985 F.2d at 533; *Swindle v. Sullivan*, 914 F.2d 222, 226 (11th Cir.1990); *Walker*, 826 F.2d at 1001. When more than one impairment exists, the plaintiff may be found disabled even though none of the impairments considered alone would be disabling. *Id*. The ALJ must evaluate the combination of impairments with respect to the effect they have on the plaintiff's ability to perform the duties of work for which he or she is otherwise capable. *Lucas*

*v. Sullivan*, 918 F.2d 1567, 1574 (11th Cir.1990).  Merely reciting that the plaintiff's impairments in combination are not disabling is not enough.  The ALJ is required to make specific and well articulated findings as to the effect of the combination of impairments.  *Walker*, 826 F.2d at 1001.

## Legal Analysis

In this case, the ALJ found that the plaintiff suffered from post-laminectomy syndrome, degenerative disc disease, peripheral neuropathy, obesity, and borderline hypertension, which are severe impairments, but none of which, singly or in combination, met or medically equaled the criteria of any of the listing of Impairments found in 20 CFR 404, Subpart P, Appendix 1 (R. 21).  The ALJ considered the plaintiff's subjective complaints of pain, but found the plaintiff's testimony about her pain to be not credible in light of his finding that "substantial evidence as a whole does not confirm disabling pain or limitations" (R. 25).  The ALJ stated that based on the "entire documentary evidence of record, as well as the testimony at the hearing, I conclude that, by July 1, 1998, the claimant had experienced medical improvement in her condition related to her ability to work, with a residual functional capacity to perform sedentary work...." (R. 25).

The ALJ determined that the plaintiff had a residual functioning capacity to perform work at the "sedentary" level, with further specific requirements of a sit/stand option with no more than occasional bending, stooping, squatting, climbing,

or twisting; no pushing/pulling of the upper or lower extremities, and no driving (R. 25). Based on the ALJ's conclusion that the plaintiff could perform such work, he determined any testimony otherwise was not credible (R. 25). However, the only mention in the ALJ's questioning of the VE regarding limits on lifting was when the plaintiff's attorney asked the ALJ, "your Honor, what lifting abilities or weight limits are we considering?" to which the ALJ responded, "At this point, none" (R. 481). Because sedentary work involves lifting no more than ten pounds at a time,[3] and no evidence reflects the plaintiff can lift this much weight, the question to the VE was incomplete.[4] The court finds that the hypothetical posed to the VE did not include "all of the claimant's impairments" as required. *See Wilson v. Barnhart,* 284 F.3d 1219, 1227 (11th Cir.2002). Therefore, the ALJ's finding, based on the VE's testimony, that there were some minimal number of jobs the plaintiff could perform is not supported by substantial evidence because the hypothetical was incomplete.

The plaintiff argues that the ALJ failed to properly apply the 11th Circuit three-part pain standard. Plaintiff's memorandum at 5. In assessing pain allegations, this court must consider 1) evidence of an underlying medical condition and either 2)

---

[3] *See* 20 C.F.R. § 416.967(a).

[4] The ALJ never did provide any limitation to the VE on the amount of weight the plaintiff could lift. He then wrote in his decision that Dr. Livingston's opinion that the plaintiff could perform no lifting or carrying was refuted by the plaintiff's testimony that she could lift five pounds (R. 23-24).

objective medical evidence that confirms the level of severity of the alleged pain arising from that condition or 3) that the objectively determinable medical condition is of a severity which can reasonably be expected to give rise to the alleged pain. *See e.g Holt v. Sullivan,* 921 F.2d 1221, 1223 (11th Cir.1991).  While the ALJ properly cited this standard, he failed to apply it.  The plaintiff does have an underlying medical condition, that being degenerative disk disease and protrusion at multiple levels (*See, e.g.,* R. 309). MRIs and CT scans confirm the severity of the plaintiff's alleged pain.  A CT scan in March 1998 reflected diffuse bulging at L5-S1 with evidence of neural foraminal narrowing, possibly causing compression of the right L5 nerve root; diffuse disc bulging at L4-5 associated with osteophyte formation causing slight narrowing of the central canal and left lateral recess; and diffuse disc bulging causing moderate canal stenosis and bilateral lateral recess narrowing at L4 (R. 213). A November 1998 MRI found laminotomy defect, epidural fibrosis, broad based extra-dural lesion, a bilateral lateral recess stenosis which was found to be a broad based disc protrusion with a calcified annulus, and facet joint hypertrophy bilaterally, all at L5-S1 (R. 312).  A broad based extradural lesion and a disc herniation were noted at L4-5 and a disc herniation was seen at L3-4 as well as a moderate degree of stenosis (R. 312).  A small disc protrusion was also noted at the T12-L1 level (R. 313).  Such testing is "objective medical evidence" which details

medical conditions of such severity that they can be "reasonably expected to the alleged pain." *See Holt*, 921 F.2d at 1223.

This court finds the plaintiff's subjective complaints of pain to be credible and equivalent to the pain expected by her ailments. *See Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir.1995). Subjective pain testimony supported by objective medical evidence of a condition that can reasonably be expected to produce the symptoms of which the plaintiff complains is sufficient to sustain a finding of disability. *Johns v. Bowen,* 821 F.2d 551, 557 (11th Cir.1987). This court finds an abundance of evidence, detailed above, to support the plaintiff's subjective complaints of pain. Medical records of the plaintiff's three back operations, numerous unhelpful epidural injections, and her subsequent treatment from Drs. Clark and Cosgrove, the latter of which involved prescriptions for narcotic painkillers and other pain medications, reveal the severity of her degenerative disc disease. This court finds this allegation to be credible.

The plaintiff next asserts that the ALJ failed to give proper weight to the plaintiff's treating physician. Plaintiff's memorandum, at 8. No less than three treating physicians and two consultative physicians have believed the plaintiff's allegations of debilitating pain. None of them have opined she is malingering or drug seeking. However, the ALJ relied on the fact that no record reflects that Dr. Clark reconsidered his determination on July 15, 1998, that the plaintiff could return to

work (R. 23). This ignores Dr. Clark's notation that the plaintiff was not working in February 2000 (R. 309). This is followed in the record by a form completed by Dr. Clark in which he checked "No" in response to the question "Can patient return to work?" (R. 310). The plaintiff asserts this form was completed at the time of the plaintiff's February 2000 visit, which the ALJ chose to ignore because it is undated (R. 22).

The ALJ further found Dr. Clark's recommendation for weight loss and water/whirlpool therapy evidence that the plaintiff was not disabled (R. 22-23). The court finds whether or not the plaintiff is a candidate for a weight loss program or water therapy has no relation to whether she is capable of substantial gainful employment. The ALJ also found that neither of the reports of Dr. Purdy nor Dr. Livingston concluded that the plaintiff was disabled (R. 23). Rather, the ALJ creatively found that although Dr. Purdy stated the plaintiff would have trouble sitting, standing, walking, lifting, carrying and traveling, "he did not report that the claimant would be unable to perform those activities on a sustained basis, eight hours per day, 40 hours per week" (R. 23). The ALJ discounts Dr. Livingston's conclusion that the plaintiff is unable to lift and/or carry because "Dr. Livingston did not report that he believed the claimant to be so limited, but that such limitation was based on the claimant's 'subjective complaints'" (R. 23).

Similarly, the ALJ notes that Dr. Poczatek did not opine that the plaintiff had disabling pain, but rather only recommended she enroll in a chronic pain management program (R. 24).  Surely Dr. Poczatek would not recommend a chronic pain management program if the plaintiff was not in chronic pain.  Additionally, the ALJ faults the plaintiff for not enrolling in a chronic pain management program, although the records reflect that she has.[5]  Lastly, the ALJ found that the plaintiff's testimony that she spends her time crocheting, reading, and performing household chores for brief periods of time showed activity not inconsistent with a range of sedentary work (R. 25).  However, the Eleventh Circuit Court of Appeals has stated that "[n]or do we believe that participation in everyday activities of short duration, such as housework .... disqualifies a claimant for disability...." *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir.1997).

This court finds that the records of the treating and consultative physicians in evidence support each other. No medical evidence contradicts these physicians' conclusions, and none of them opined that the plaintiff was malingering. Rather, they demonstrate that the plaintiff's treating physician referred her to specialists searching for treatment for her symptoms.  The court finds the record devoid of substantial evidence to support the decision of the ALJ.  The ALJ could only reach this

---

[5]The first record before this court from Dr. Cosgrove is dated February 28, 2006 (R. 411). However, that record states that the plaintiff presents for follow-up (R. 411), suggesting she had been seen by Dr. Cosgrove prior to this time.

17

conclusion by ignoring or substituting his judgment for the medical evidence contained in the record. The Commissioner's "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-1146 (11th Cir.1991).

The ALJ even asserted that if the plaintiff complies with the residual functional capacity assigned by him, she is expected to have no greater than moderate functional limitations due to pain[6] (R. 25). However, "as a hearing officer [the ALJ] may not arbitrarily substitute his own hunch or intuition for that of a medical professional." *Marbury v. Sullivan*, 957 F.2d 837, 840-41 (11th Cir.1992). *See also Graham v. Bowen*, 786 F.2d 1113, 1115 (11th Cir.1986). Good cause to discredit a treating physician's opinion on disability or inability to work only exists where the doctor's opinion is not supported by the evidence, is inconsistent with the physician's own medical records, or merely is conclusory. *Lewis*, 125 F.3d at 1440. None of these exceptions is relevant here. All of the treating physicians, as well as the consultative physicians, reach the same conclusions as to the plaintiff's medical problems. The ALJ cannot arbitrarily reject uncontroverted medical testimony. *Walden v. Schweiker*, 672 F.2d 835, 839 (11th Cir. 1982); *see also Flynn v. Heckler*, 768 F.2d

---

[6]The plaintiff argues that the ALJ's assessed residual functioning capacity is baseless. Plaintiff's memorandum, at 12.

1273, 1275 (11th Cir. 1985). Here, multiple medical opinions concerning causation of the plaintiff's pain from objective medical evidence are before the court. By inferring that the plaintiff was able to work from his selective review of the evidence, the ALJ substituted his opinion for that of all of the medical reports in the file.

The ALJ did not consider all of the evidence that was introduced into evidence. His finding that the plaintiff is not disabled is against the substantial weight of the evidence. This court finds that the substantial weight of the evidence dictates a finding that the plaintiff has been under a disability since May 1997 and therefore the plaintiff is entitled to benefits in accordance with this determination.

## Conclusion

When evidence has been fully developed and unequivocally points to a specific finding, the reviewing court may enter the finding that the Commissioner should have made. *Reyes v. Heckler*, 601 F.Supp. 34, 37 (S.D.Fla.1984). Thus, this court has the authority under 42 U.S.C. §405(g) to reverse the Commissioner's decision without remand, where, as here, the Commissioner's determination is in plain disregard of the overwhelming weight of the evidence. *Davis v. Shalala*, 985 F.2d at 534; *Bowen v. Heckler*, 748 F.2d 629, 636 (11th Cir.1984). Here, the ALJ has disregarded the evidence in the record in spite of two opportunities to consider it. Based on the lack of substantial evidence in support of the ALJ's findings, it is hereby **ORDERED** that

the decision of the Commissioner is **REVERSED.**  This case is **REMANDED** to the Agency to calculate the plaintiff's monetary benefits in accordance with this Opinion.

**DONE** and **ORDERED** the 30th day of January, 2008.

INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE